MITCHELL J. LANGBERG, Bar No. 10118
mlangberg@bhfs.com
**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:     702.382.2101

DARRYL M. WOO (*will comply with LR IA 11-2 within 10 days*)
ROLAND CHANG (*will comply with LR IA 11-2 within 10 days*)
**GOODWIN PROCTER LLP**
Three Embarcadero Center
San Francisco, California 94111
Tel.: (415) 733-6000
*dwoo@goodwinlaw.com*
*rolandchang@goodwinlaw.com*

DAVID R. CALLAWAY (*will comply with LR IA 11-2 within 10 days*)
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, California 94063
Tel.: (650) 752-3100
*dcallaway@goodwinlaw.com*

*Attorneys for Plaintiff*
BANQ, INC.

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| BANQ, INC., a Florida corporation,<br><br>            Plaintiff,<br><br>v.<br><br>SCOTT PURCELL, an individual, GEORGE GEORGIADES, an individual, KEVIN LEHTINIITTY, an individual, FORTRESS NFT GROUP, INC. d/b/a FORTRESS BLOCK CHAIN TECHNOLOGIES, a *Delaware* corporation, and PLANET NFT, INC., a *Delaware* corporation,<br><br>            Defendants. | CASE NO.  2:22-cv-00773<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1)   DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1832 *ET SEQ.*;**<br>**(2)   NEVADA UNIFORM TRADE SECRETS ACT, NRS CH. 600A;**<br>**(3)   COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 *ET SEQ.*;**<br>**(4)   UNLAWFUL ACTS REGARDING COMPUTERS, NRS 205.4765**<br>**(5)   CONVERSION;**<br>**(6)   FRAUD;**<br>**(7)   INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(8)   BREACH OF FIDUCIARY DUTIES**<br>**(9)   AIDING AND ABETTING BREACHES OF FIDUCIARY DUTIES;**<br>**(10)  NEGLIGENCE FOR SPOLIATION;**<br>**(11)  UNJUST ENRICHMENT**<br><br>**JURY DEMAND** |

- 1 -

**INTRODUCTION**

Plaintiff Banq, Inc. ("Banq" or the "Company"), a Florida corporation, brings this Complaint against defendant individuals Scott Purcell, George Georgiades, and Kevin Lehtiniitty (the "Defendant Individuals"), and defendants Fortress NFT Group, Inc., d/b/a Fortress Blockchain Technologies, a Delaware corporation ("Fortress NFT"), and Planet NFT, Inc., a Delaware corporation ("Planet NFT") (collectively, "Defendants"), for misappropriation of trade secrets under the federal Defend Trade Secrets Act (18 U.S.C. § 1839, *et seq.*) and the Nevada Uniform Trade Secrets Act (NRS Ch. 600A), violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*) ("CFAA") and Nevada's corresponding statute (NRS 205.4765), conversion of Banq's corporate assets, fraud, interference with prospective economic advantage, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duties, negligence for spoliation of evidence, and unjust enrichment.

1.     This is a case to stop ongoing irreparable harm and damages to Banq based on Defendants' theft of Banq's corporate assets, trade secrets, and proprietary technology. Defendants were previously employed by Banq in positions of control, access, and authority. In particular, Defendant Purcell was Banq's Chief Executive Officer ("CEO"), Defendant Lehtiniitty was Banq's Chief Technology Officer ("CTO") & Chief Product Officer ("CPO"), and Defendant Georgiades was Banq's General Counsel and Chief Compliance Officer. In abuse of their high-level roles, the Defendant Individuals used Banq's resources to develop technology infrastructure for blockchain non-fungible tokens ("NFTs"), such as a cross-chain, application programming interface-driven NFT "wallet" that can be embedded directly into an enterprise application, and other Web3 blockchain infrastructure technologies. Defendants then stole not only Banq's technology, but also significant other value of Banq's, and used the purloined property to launch Defendants Fortress NFT and Planet NFT using Banq's assets, employees, trade secrets and proprietary technology, claiming all of it to be their own. On their way out of Banq, and to cover-up their wrongdoing, the Defendant Individuals deleted Banq's electronic files and records, and walked out the door with company laptops, computer equipment, source code, data, and files, leaving almost no property of any significant value behind. Defendants' draining of Banq's intellectual property and other assets

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

- 2 -

even included taking the company's seat licenses for Las Vegas Raiders games at Allegiant Stadium.

## **PARTIES**

2.     Plaintiff Banq is a Florida corporation with its principal and usual place of business located at 10845 Griffith Peak Drive, Suite 200, Las Vegas, Nevada.  As explained below, Banq had been in the business of developing peer-to-peer electronic payment, blockchain, and cryptocurrency technologies in the form of a customer-focused mobile application, until in or around May 2021, when Defendant Scott Purcell and others pivoted the focus of Banq to the development and business of NFT-related technologies, including an application programming interface ("API")-driven NFT wallet.

3.     Defendant Scott Purcell ("Purcell") is an individual residing in Clark County, Nevada.  From July 2019 to December 2021, Purcell had been employed by Banq as its CEO.  As explained below, while employed by Banq, Purcell plotted his theft of company assets, and in or about September 2021, while still Banq's CEO, formed Defendant Fortress NFT, and named himself as CEO of Fortress NFT, which he currently runs.

4.     Defendant Kevin Lehtiniitty ("Lehtiniitty") is an individual residing in Clark County, Nevada.  From July 2019 to December 2021, Lehtiniitty was Banq's CTO and CPO. Lehtiniitty now purports to be the co-founder, CTO, and CPO of Defendant Fortress NFT.  As more fully set forth below, while at Banq, Lehtiniitty plotted with Purcell and Georgiades to steal Banq's company assets for use in Defendant Fortress NFT, the company they formed while still employed at Banq.

5.     Defendant George Georgiades ("Georgiades") is an individual residing in Clark County, Nevada.  From July 2019 to October 2021, Georgiades had been employed by Banq as its General Counsel and Chief Compliance Officer.  Georgiades now purports to be the General Counsel of Defendant Fortress NFT.  As a member of the New York state bar and as Banq's General Counsel, Georgiades owed duties of loyalty to his client, Banq.  As more fully set forth below, while employed by Banq, in breach of his duties to Banq, Georgiades plotted with Purcell and

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

COMPLAINT

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

Lehtiniitty to steal Banq's company assets for use in Purcell's newly formed company, Defendant Fortress NFT.

6.    Defendant Fortress NFT is a Delaware corporation with its principal place of business located in Las Vegas, Nevada.  Fortress NFT is a Web3 infrastructure company whose initial product is an API-driven NFT wallet.  Fortress NFT was incorporated in September 2021 and launched using Banq's assets, technology, and resources.

7.    Defendant Planet NFT is a Delaware corporation with its principal place of business located in Las Vegas, Nevada.  Defendant Purcell registered the entity Planet NFT, LLC with the State of Nevada in August 2021.  Planet NFT, LLC is a wholly owned subsidiary of Planet NFT.  On information and belief, Planet NFT is an affiliate of and agent for Fortress NFT, and Planet NFT works in conjunction with and for the benefit of Fortress NFT.  Planet NFT provides technology services to mint, publish, and store NFTs, a corporate opportunity and service that Banq intended to provide.

## JURISDICTION AND VENUE

8.    This is a civil action for misappropriation of trade secrets under the federal Defend Trade Secrets Act (18 U.S.C. § 1839, et seq.) and the Nevada Uniform Trade Secrets Act (NRS Ch. 600A), violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.) and NRS 205.4765, conversion of Banq's corporate assets, fraud, interference with prospective economic advantage, breaches of fiduciary duty, aiding and abetting breaches of fiduciary duties, negligence for spoliation of evidence, and unjust enrichment.

9.    This Court has original subject matter jurisdiction for Banq's federal trade secrets claim and CFAA claim pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331 because Banq has asserted claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act and for violations of the federal Computer Fraud and Abuse Act.  The Court also has supplemental jurisdiction over Banq's claims for misappropriation of trade secrets under the Nevada Uniform Trade Secrets Act, violations of NRS 205.4765, conversion of Banq's corporate assets, fraud, interference with prospective economic advantage, breaches of fiduciary duty, aiding and abetting

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

breaches of fiduciary duties, negligence for spoliation of evidence, and unjust enrichment, pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendant Purcell because, on information and belief, he resides in the District of Nevada and a substantial portion of his acts committed in furtherance of the violations alleged herein occurred in the District.

11.     This Court has personal jurisdiction over Defendant Georgiades because, on information and belief, he resides in the District of Nevada and a substantial portion of his acts committed in furtherance of the violations alleged herein occurred in the District.

12.     This Court has personal jurisdiction over Defendant Lehtiniitty because, on information and belief, he resides in the District of Nevada and a substantial portion of his acts committed in furtherance of the violations alleged herein occurred in the District.

13.     This Court has personal jurisdiction over Defendant Fortress NFT under NRS § 14.065 because its principal place of business is in Las Vegas, Nevada and it received and retains Banq's stolen assets.

14.     This Court has personal jurisdiction over Defendant Planet NFT under NRS § 14.065 because its principal place of business is in Las Vegas, Nevada and it operates based on technology and information stolen from Banq.

15.     Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) because this is the judicial district where: (i) a substantial part of the events giving rise to the claims occurred; and (ii) Defendants are subject to personal jurisdiction.

## FACTUAL BACKGROUND

### A. Prime Trust and Development of the "Banq" Subsidiary

16.     Prime Trust, LLC ("Prime Trust") is a financial technology company in Las Vegas, Nevada that creates financial infrastructure products for financial technology and digital asset innovators.  Banq grew out of an effort by Prime Trust in or around early 2019 to host a suite of blockchain and cryptocurrency-related services and technologies in the form of a customer-focused mobile application intended to be called or branded "Banq."  "Banq" represented a new avenue for Prime Trust to reach consumers and boost revenues.  Banq was initially formed as a limited liability

company ("LLC") on July 9, 2019.  The LLC was converted to Banq, Inc. on September 23, 2019.  The stated purpose of the corporation is: "[t]o engage in technology and software development for enabling and processing of electronic funds transfers and payments as permitted by applicable law and regulations."  On that same date in September, Defendant Purcell and Jon Jiles, the Chairman of the Prime Trust's Board of Directors, were elected Banq's Board of Directors.

**B.  Banq's Trade Secrets, Corporate Assets, and Proprietary Technology**

17.     When originally formed, the purpose of Banq was to develop an evolving payments application and platform with cryptocurrency capabilities for consumers.  Among other things, the Banq application would allow users to consolidate their financial assets, including United States dollars, Bitcoin, savings, peer-to-peer payments, and business accounts within one single technology platform.  The idea was to make Banq the customer-facing application for digital asset transactions.  In addition, Banq offered a set of APIs to select customers that would allow them to make and receive payments using their financial assets.

18.     A goal of the Banq application and platform was to provide users with the ability to invest in and easily transfer cryptocurrency and other digital assets through any personal, business, IRA, trust, or college savings accounts.  As explained by Defendant Purcell to the Banq team in March 2021, the company was prioritizing the ability to invest in cryptocurrency, followed by public stocks.  An aim was that eventually Banq's technology would tie into Prime Trust's technology for investments in real estate and private securities.

19.     Banq invested substantially in the research and development of technology for the creation of its payments application and platform.  The valuable, confidential, and proprietary information, intellectual property, and trade secrets developed through this investment enabled Banq to create proprietary technology in the financial technology, blockchain, and cryptocurrency space.

20.     At all times, Banq has taken reasonable measures to protect the confidentiality of its proprietary information, intellectual property, and trade secrets, including storing it on password-protected computers and disclosing it only on a need-to-know or protected non-disclosure

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

COMPLAINT

agreement ("NDA") basis.  Banq requires, for example, its employees and independent contractors to execute confidentiality agreements and NDAs.

21.     On information and belief, all Nevada employees of Banq signed the Proprietary Information and Inventions Agreement, which required them to agree that:

> all Inventions and all other business, technical and financial information (including, without limitation, the identify of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to [Banq] or the business or demonstrably anticipated business of [Banq] or that are received by or for [Banq] in confidence, constitute 'Proprietary Information.'  I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information.  Upon termination of my employment, I will promptly return to [Banq] all items containing or embody Proprietary Information (including all copies) . . . .

Because of the high-level nature of the Defendant Individuals' positions within the company, they had access to all of Banq's assets, including its trade secrets, intellectual property, and other proprietary information.

22.     Defendant Purcell has repeatedly acknowledged that Banq invested "millions of dollars" in the development of its trade secrets and valuable, confidential, and propriety information and intellectual property.  He has further acknowledged that Banq's intellectual property was the result of "years of development costing millions of dollars."  According to him, due to Banq's substantial investment in intellectual property, along with a "crypto-embracing, payment and regulatory experienced founding team," Banq had "almost everything this market needs, including both the mobile app and the API's (sic)."

23.     Defendant Purcell stated to Banq's shareholders that the company had a "phenomenal brand" and he even opined that the company had the potential for "a $968 billion market cap (Facebook's current value)."

**C.  Defendant Purcell Unilaterally Pivots Banq to NFTs**

24.     Despite Banq's successful direction and trajectory, in or around May 2021, while serving as Banq's CEO, Defendant Purcell unilaterally decided to execute "a major pivot" at the company to focus instead on NFTs.  Without consulting with or obtaining the approval of the Banq Board, on May 13, 2021, Defendant Purcell notified all of Banq's shareholders that he was shutting

Brownstein Hyatt Farber Schreck, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

down "[a]ll sales & marketing efforts to [other business lines]" at the company, "executing a major pivot," and that the company was already "heads down in the middle of it.  Focus is on NFT's (sic)."  Defendant Purcell pivoted Banq's resources, personnel, and assets away from its revenue generating business valued at approximately $40 million, and started developing instead an application that would provide comprehensive financial infrastructure to process payments and provide accounting, banking, and wallet services for NFTs and cryptocurrency transactions.

25.    Defendant Purcell reiterated that pivot in a June 27, 2021 update to Banq's Board and shareholders in which he asserted that Banq had a "rare opportunity" to be "***the foundation for disruptive, revolutionary technology that will utterly transform everything from healthcare to the stock market, real estate, photo, film & music royalties, art, sports & concert tickets, DMV records, and more.***"  Defendant Purcell's stated goal for Banq's new NFT focus was "[u]niquity (sic) of market and mindshare" and that Banq "will be part of your daily life."

26.    Defendant Purcell explained that Banq's pivot to NFTs made sense "[b]ecause NFT's (sic) fulfill the promises of blockchain technology and will reshape the future . . . Email was the killer app for the internet, and NFT's (sic) (not bitcoin) are the killer app for the blockchain." According to Purcell, Banq offered a unique value proposition because first adopters in the NFT market "are having significant problems with creating NFT's (sic), payment processing, royalty management, consumer engagement, and numerous other issues . . . tools to manage the stream of royalty payments are non-existent, the ability to 'Fx' crypto to USD (and other currencies) is almost impossible for everyone except the most crypto-savvy enthusiasts, its expensive to share or give them as gifts, and the data/content that NFT's (sic) ultimately unlock is at risk given its often held by unregulated data vaults."

27.    During the "pivot" process, on August 7, 2021, Defendant Purcell again represented to Banq's shareholders that the company had "a tremendous amount of proprietary intellectual property."

28.    On August 27, 2021, Defendant Purcell communicated to the Banq team that the company "has exactly the right product, at the right time, in the right place" for the NFT market. He stated that Banq had "the opportunity to be the foundation for this new world . . . to be as

ubiquitous as Facebook (and as profitable)."  Defendant Purcell stated that sales and marketing for Banq was "insane."

**D.**    **The Defendant Individuals Create Fortress NFT and Planet NFT to Steal Everything from Banq**

29.    At the same time that Defendant Purcell was making these material representations to Banq's Board, shareholders, and employees regarding the value of Banq's intellectual property, opportunities, and brand, he was colluding with the Defendant Individuals to steal and usurp the corporate assets, trade secrets, corporate opportunities, and proprietary technology developed at Banq for their own personal gain.

30.    In or around August 2021, while still employed by Banq, Defendant Purcell registered Planet NFT, LLC with the State of Nevada.  Planet NFT, LLC is a wholly owned subsidiary of Defendant Planet NFT, Inc.

31.    Unbeknownst to Banq's Board and shareholders, on September 20, 2021, and while still employed by Banq, Defendants Purcell and Georgiades incorporated Defendant Fortress NFT. Defendant Fortress NFT is a Web3 infrastructure company, founded by Defendants Purcell and Georgiades as a repository for, and use of, assets, opportunities, technology, and resources stolen from Banq.  Relying on the stolen intellectual property, trade secrets, and other property of Banq, Defendants market and advertise that Fortress NFT provides technological infrastructure for NFT and cryptocurrency transfers and transactions through blockchain technologies—precisely the products to which Defendant Purcell had pivoted Banq.

32.    On information and belief, at least as early as September 2021, the Defendant Individuals began a secret and concerted effort to improperly transfer the employees, trade secrets, intellectual property, technology, and business opportunities of Banq to Defendant Fortress NFT. For example, Defendants Purcell and Georgiades started pretextual terminations of engineers and other employees at Banq, all of whom subsequently went to work for Defendant Fortress NFT or its affiliate, Planet NFT.

33.    The Defendant Individuals hired a third-party contractor, Softserve, to develop software code for Banq.  Then, the Defendant Individuals directed SoftServe and its agents to

- 9 -

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

improperly access Banq's technology after the departure of the Defendant Individuals from Banq, and have continued to do so, including as recently as April 2022.  On information and belief, Defendants are causing Softserve to use Banq's intellectual property, software, and code to misappropriate and develop the same technology for Defendants Fortress NFT and Planet NFT.

34.   On October 1, 2021, at the direction of the Defendant Individuals and without notice to or approval by Banq's shareholders and Board, Banq "sold" to Defendant Fortress NFT for $23,183.77 all of Banq's computers, which contained among other things, Banq's corporate assets, trade secrets, intellectual property, and other proprietary technology.  This purported sale was nothing more than a smokescreen to paper over the theft of Banq's confidential and proprietary information.  Banq's Board was never consulted (and would never have approved) this bargain basement "sale" of Banq's corporate property, as those electronic devices contained electronic files comprising, and provided access to, Banq's corporate assets, trade secrets, intellectual property, and other proprietary technology.

35.   In or around October 2021, the Defendant Individuals caused Banq's internal records to show themselves as "terminated" in the company's payroll system, even though the Defendant Individuals remained officers of Banq and continued to manipulate Banq's assets and resources until at least December 2021.  The Defendant Individuals concocted these paper "terminations" as part of a cover story for their ongoing theft of Banq's corporate assets, including its trade secrets, intellectual property, and other proprietary technology.

36.   In or around at least as early as October 2021, Defendant Purcell started improperly using the corporate resources of Banq to benefit the Defendant Individuals and Defendant Fortress NFT.  This included Defendant Purcell taking multiple trips to promote Defendant Fortress NFT at technology trade shows on corporate jets paid for by Banq.

37.   On December 8, 2021, while still serving as Banq's CEO and on its Board, Defendant Purcell wrote to a select group of Banq shareholders and investors and informed them that he was working on Defendant Fortress NFT and the soon-to-launch Planet NFT.  He stated that Defendant Planet NFT would be "a ridiculously easy way to publish (mint) NFT's (sic) on Polygon

and Solona, as well as sell them directly or on a marketplace like Ethernity, Autograph, OpenSea, etc."

38.     On December 15, 2021, without approval by Banq's Board and shareholders, Defendant Purcell unilaterally decided to "wind down the operations of Banq." Defendant Purcell cited Apple's then recent decision to modify the App Store's terms and conditions related to NFTs as the pretextual reason for Banq's dissolution. In reality, Defendant Purcell dissolved Banq so that the Defendant Individuals could usurp and steal Banq's proprietary technology for their own benefit.

39.     In or around December 2021, while making these representations to Banq's Board and shareholders regarding the purported dissolution of the company, Defendant Purcell was receiving and soliciting investments for Defendant Fortress NFT.

40.     In response to the actions of the Defendant Individuals, on December 16, 2021, the Chairman of Banq's Board, Jon Jiles, wrote to Defendants Purcell and Georgiades, among others. Chairman Jiles notified Defendants Purcell and Georgiades that "as officers of Banq" they had an obligation to "ensure that nothing is done to harm the going-concern value of Banq." He asked the Defendants "to preserve all records and documentation and ensure Banq's technology is secure." Chairman Jiles specifically instructed the Defendants to "not take any actions to spend or transfer Banq capital other than in the ordinary course of business and take all other actions proper and necessary to preserve the integrity of Banq's business."

41.     On December 17, 2021, notwithstanding Purcell's stated "wind-down" of "the operations of Banq," the Defendant Individuals caused Banq to pay its third-party software developer Softserve $504,000 for prior services rendered. The Defendant Individuals did this to keep Softserve from placing a lien on the technology it had developed for Banq, which could have prevented Defendants' transfer of the technology to their secretly formed companies, Defendants Fortress NFT and/or Planet NFT. Defendant Georgiades specifically noted that he wanted Softserve to be "fully paid so there is no claim or lien against the tech."

42.     On December 19, 2021, Defendant Purcell tendered concurrent resignations from his roles as Banq's CEO and a member of the Board.

43.     Three days later, on December 22, 2021, Defendants Purcell and Georgiades incorporated Defendant Planet NFT.  On information and belief, Defendant Planet NFT is an affiliate of and agent for Fortress NFT, and Planet NFT works in conjunction with and for the benefit of Fortress NFT.  Planet NFT provides technology services to mint and publish NFTs, a service that Banq had, only a few months before, and with great fanfare, been "pivoted" to provide.

44.     On January 11, 2022, the Banq Board appointed Josh Sroge ("Mr. Sroge") as interim CEO.

45.     After assuming his duties as Banq's interim CEO, Mr. Sroge uncovered additional information regarding the Defendant Individuals' wrongdoing.  Mr. Sroge learned that Defendant Purcell, prior to his departure, had repeatedly abused his role and position of authority at Banq, including as alleged above.  For instance, Mr. Sroge learned that Defendant Purcell had improperly poached all of Banq's employees who worked on sales, customer service, marketing, engineering, and accounting functions to work for Defendants Fortress NFT or Planet NFT.

46.     In addition, Mr. Sroge discovered that the Defendant Individuals either took or destroyed substantial amounts of Banq's corporate documents and records to cover up their wrongdoing.  For example, Defendants Purcell and Lehtiniitty deleted their Banq email accounts, which would have revealed their scheme while at Banq and contained information regarding Banq's corporate assets and proprietary technology.

47.     On information and belief, both before and after the Defendant Individuals left Banq, they used, copied, and employed the intellectual property of Banq to develop the technology and software currently being used and marketed by Fortress NFT and Planet NFT.

48.     The Defendant Individuals took steps to ensure that no tangible or intellectual property of significant value was left at Banq.  Their theft of Banq's corporate assets even included taking the company's seat licenses for Las Vegas Raiders' games at Allegiant Stadium, all without Board approval or knowledge.  Specifically, Defendant Purcell transferred the seat licenses owned by Banq to himself.

49.     On information and belief, Defendants Fortress NFT and Planet NFT have improperly usurped all of Banq's business opportunities and are operating the same or substantially

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

the same NFT and cryptocurrency business to which Defendant Purcell had pivoted Banq to in 2021.  For example, Defendant Fortress NFT's website markets one of its products as "[t]he all-in-one wallet that makes crypto simple," which is the exact product Banq was developing and marketing at the direction of Defendant Purcell.  In an August 27, 2021 email to Banq's Board of Directors, Defendant Purcell stated that one of the key proprietary technologies under development by Banq's design and engineering teams was a mobile app with the capability of hosting a cross-blockchain wallet for both crypto currencies and NFTs.  On October 29, 2021, Defendant Purcell provided an update to Banq's shareholders, stating that Banq's wallet app was "in fantastic shape to be an NFT wallet."  And he explained that the core proprietary functionality that Banq's team was working on for its NFT wallet app was "a 'linking' mechanism for exchanges," and claimed that the company has "made tremendous progress on the app."  These very things are now in the hands of Defendants.

50.     On April 7, 2022, Defendant Fortress NFT issued a press release that announced the release of "a cross-chain, embeddable, API-driven nonfungible token (NFT) wallet."  This is the exact product that Banq was developing prior to the departure of the Defendant Individuals from the company.

51.     These similarities are also evident in the description of the NFT wallet apps developed by these companies, as detailed on the respective websites for Banq and Defendant Fortress NFT:

| Banq Wallet App | Defendant Fortress NFT App |
|---|---|
| View, share, or gift NFTs to other users in the banq network without costly fees. Our simple interface lets you accomplish all that in a few taps. | DIGITAL ART<br><br>**Create a personal art gallery in your pocket.**<br><br>Collect, show-off and share blockchain's finest digital art pieces from your Fortress Wallet. |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Banq Wallet App | Defendant Fortress NFT App |
| --- | --- |
| **Secure storage**<br><br>All assets are secured on banq's content vault, ensuring the integrity of tokens and the network at-large. This fulfills NFT's initial promise of guaranteeing asset ownership, not merely ownership of a related token with an asset address. | **SECURITY**<br><br>**No keys, no problem**<br><br>Utilizing multi-layer security, Fortress secures your private keys for you, enabling a safe and simple login, and password recoverable account, so you can easily collect NFTs, hold crypto, and interact with blockchain applications. |
|  |  |
| **Publishers going the NFT route**<br><br>Publishers enjoy a thriving NFT ecosystem complete with a social platform that delivers actionable audience data. We cover royalty enforcement for multiple parties, the proceeds of which are directly deposited into the correct account. | **ROYALTY ESCROW**<br><br>**Royalties That SEP Work.**<br><br>Automatically convert crypto royalties into USD you can actually use, invite multiple admins to create transparency among all the parties owed parts of proceeds, and hold the funds with a third party to ensure the royalties are distributed properly. |

- 14 -

# FIRST CLAIM FOR RELIEF
## Misappropriation of Trade Secrets Under the Federal Defend Trade Secrets Act
### (18 U.S.C. § 1836, et seq.)
### Against All Defendants

52. The allegations of paragraphs 1 through 51 are incorporated herein by reference.

53. As alleged above, Banq owns and possesses confidential and trade secret information, including with respect to its NFT related technologies and an API-driven NFT wallet. Banq invested substantial resources in developing this valuable and proprietary information.

54. Banq's trade secrets relate to products and services used, sold, and ordered in, or intended to be used, sold, and/or ordered in, interstate and foreign commerce. Specifically, Banq's NFT-related technologies are used by Banq and Banq's customers throughout the United States.

55. At all times, Banq has taken reasonable measures to protect the confidentiality of its proprietary information, intellectual property, and trade secrets, including storing it on password-protected computers and disclosing it only on a need-to-know or protected non-disclosure agreement basis. Banq requires, for example, its employees and independent contractors to execute confidentiality agreements and NDAs.

56. Banq's proprietary and confidential information derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information. Accordingly, the above-described information constitutes "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, et seq.

57. In violation of Banq's rights, Defendants have willfully misappropriated Banq's trade secrets. Defendants Purcell, Georgiades, and Lehtiniitty knowingly and deliberately accessed, used, and disclosed Banq's trade secrets to Defendants Fortress NFT and Planet NFT, which knew or should have known that Defendants Purcell, Georgiades, and Lehtiniitty were using Banq's trade secret information and technology for the benefit of Defendants Fortress NFT and Planet NFT. In addition, Defendants Purcell, Georgiades, and Lehtiniitty knowingly and deliberately accessed, used, and disclosed other aspects of Banq's then-confidential and trade secret

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

technology to Defendants Fortress NFT and Planet NFT, thus enabling them to develop a nearly identical product almost instantaneously.

58.     Defendants Fortress NFT and Planet NFT, through at least Defendants Purcell, Georgiades, and Lehtiniitty, knew or should have known that the Banq technology it received did not belong to them and instead was owned by Banq.  In addition, Defendants Fortress NFT and Planet NFT knew or should have known this because not only are those Defendants controlled by the Defendant Individuals, but it is also well-known in the blockchain industry that another company's technological information relating to a company's source code and platform are often the confidential trade secrets and intellectual property of the platform's creator and are protected by confidentiality agreements.  Indeed, as alleged above, the Defendant Individuals knew this because they were in high level positions of control and authority at Banq.

59.     Because the Defendant Individuals control and operate Defendants Fortress NFT and Planet NFT, these companies knew that Defendants Purcell, Georgiades, and Lehtiniitty were employed by Banq where they had access to confidential information subject to non-disclosure and confidentiality obligations.

60.     Defendants Fortress NFT and Planet NFT thus knew that the trade secret information they received from Banq, including through Defendants Purcell, Georgiades, and Lehtiniitty, was derived from or through a person or persons who had used improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, and/or was derived from or through a person who owed a duty to Banq to maintain its secrecy.

61.     Defendants' misappropriation of Banq's trade secrets has been willful and malicious, thereby entitling Banq to attorneys' fees and exemplary damages to be proved at trial pursuant to 18 U.S.C. §§ 1836(b)(3)(c)-(d).

62.     As a direct and proximate result of Defendants' conduct, Banq has suffered and will continue to suffer monetary damages in an amount to be determined at trial.

63.     Defendants' conduct is causing and will continue to cause Banq irreparable harm. If Defendants' conduct is not remedied, Defendants Fortress NFT and Planet NFT will continue to

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

misappropriate, disclose, and use Banq's trade secret information for its own benefit and to Banq's detriment. Because Banq's remedy at law is inadequate for these harms, Banq seeks, in addition to damages, permanent injunctive relief and other equitable relief, including unjust enrichment, to recover and protect its trade secrets and other legitimate business interests.

## SECOND CLAIM FOR RELIEF
### Misappropriation of Trade Secrets Under the Nevada Uniform Trade Secrets Act (NRS Ch. 600A)
### Against All Defendants

64. The allegations of paragraphs 1 through 63 are incorporated herein by reference.

65. Defendants' alleged conduct in violation of the DTSA also constitutes violations of Nevada's Uniform Trade Secrets Act, NRS Ch. 600A.

66. As a result of Defendants' misappropriation of trade secrets, Banq has suffered damages, including actual, exemplary, and/or unjust enrichment damages to Banq.

67. As the direct and proximate result of Defendants' conduct, Banq has suffered and will continue to suffer irreparable injury. Because Banq's remedy at law is inadequate for these harms, Banq seeks, in addition to damages, permanent injunctive relief and other equitable relief, including unjust enrichment, to recover and protect its trade secrets and other legitimate business interests.

## THIRD CLAIM FOR RELIEF
### Violations of the Computer Fraud and Abuse Act
### (18 U.S.C. § 1030 et seq.)
### Against Defendant Individuals

68. The allegations of paragraphs 1 through 67 are incorporated herein by reference.

69. On information and belief, after their departure from Banq, the Defendant Individuals violated 18 U.S.C. § 1030(a)(5)(C) by intentionally accessing the computer systems of Banq without authorization to copy and use Banq's proprietary and confidential information. After their departure from Banq, the Defendant Individuals also directed and caused the third-party contractor, Softserve, to intentionally access Banq's computer systems without authorization and as a result, caused damage to Banq by copying, storing, and using Banq's confidential information and/or data.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

70.     The Defendant Individuals obtained confidential and proprietary information from Banq's protected cloud-based server system, which is connected to the Internet and is used in interstate and foreign commerce without authorization and obtained information therefrom in violation of 18 U.S.C. § 1030(a)(2)(C).

71.     The Defendant Individuals accessed Banq's computer systems with the intent to steal, deprive, and defraud Banq of its computer data and records and to use those data and records for improper purposes on behalf of themselves and Defendants Fortress NFT and Planet NFT—to the detriment of Banq.

72.     As former officers of Banq, the Defendant Individuals were not authorized to access Banq's computers or database following their resignations from employment at Banq for any purpose, including for purposes inimical and injurious to Banq and its interests.

73.     By means of this conduct, the Defendant Individuals knowingly and intentionally obtained valuable proprietary and confidential information from Banq's computer systems and furthered their scheme and conspiracy with Defendants Fortress NFT and Planet NFT.

74.     In taking the above actions, the Defendant Individuals have damaged Banq in that, among other things, the Defendant Individuals have caused competitive harm to Banq, and have caused Banq to expend resources to investigate the unauthorized access and to prevent such access from continuing.  The losses caused by the Defendant Individuals as a result exceed $5,000 within a period of one year in violation of the law including, but not limited to, 18 U.S.C. § 1030(c)(4)(A)(i)(I).

75.     As a direct and proximate result of the Defendant Individuals' wrongful conduct, Banq has been irreparably injured and has suffered damages. Unless restrained and enjoined, the Defendant Individuals will continue to commit such acts.  Banq's remedy at law is not adequate to compensate it for these inflicted and threatened injuries, entitling Banq to remedies including injunctive relief as provided by § 1030(g).

## FOURTH CLAIM FOR RELIEF
### Violations of NRS 205.4765
### Against All Defendants

76.     The allegations of paragraphs 1 through 75 are incorporated herein by reference.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

77.     Defendants violated NRS 205.4765(1) by knowingly, willfully, and without authorization using, transferring, taking, retaining possession of, copying, obtaining or attempting to obtain access to data, programs, and documents, including Banq's confidential and proprietary information that exists inside of Banq's computers, computer systems, and/or computer networks.

78.     Defendants violated NRS 205.4765(2) by knowingly, willfully and without authorization using, taking, transferring or retaining possession of equipment or supplies that are used or intended to be used in Banq's computers or computer networks.

79.     Defendants violated NRS 205.4765(3) by knowingly, willfully and without authorization using, damaging, obtaining or attempting to obtain access to Banq's computers or computer networks.

80.     Defendants violated NRS 205.4765(4) by knowingly, willfully and without authorization transferring or using devices that are used or intended to be used in Banq's computers or computer networks.

81.     As a direct and proximate result of Defendants' unlawful conduct, Defendants have caused damage to Banq in an amount to be proven at trial.  Banq is also entitled to recover its reasonable attorneys' fees pursuant to NRS 205.511(1)(c).

82.     Defendants' actions were willful and malicious and were done with the deliberate intent to injure Banq's business and improve their own. Banq is therefore entitled to punitive damages under NRS 205.511(1)(b).

## FIFTH CLAIM FOR RELIEF
### Conversion
### Against All Defendants

83.     The allegations of paragraphs 1 through 82 are incorporated herein by reference.

84.     As set forth herein, the conduct of the Defendant Individuals constitutes conversion of Banq's trade secrets, equipment, and corporate assets.

85.     As alleged herein, Defendants Fortress NFT and Planet NFT took possession of and wrongfully exercised dominion over Banq's computers, software, trade secrets, intellectual property, and other properties and assets, including the company's seat licenses for Las Vegas Raiders games at Allegiant Stadium.

86.     As a result of the Defendants' acts of conversion, Banq has been injured and suffered damages in an amount to be determined at trial.

87.     Banq is entitled to punitive damages because Defendants' conduct was intended to harm Banq and was engaged in with a conscious disregard for Banq's rights.

88.     Banq has suffered and will continue to suffer irreparable harm as a result of Defendants' activities, for which Banq has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### Fraud
### Against Defendant Purcell

89.     The allegations of paragraphs 1 through 88 are incorporated herein by reference.

90.     As alleged above, on or about May 2021, Defendant Purcell unilaterally decided to execute "a major pivot" at Banq to focus on NFT-related technologies.

91.     On or about June 27, 2021, in an update to Banq's Board and shareholders, Defendant Purcell falsely and with the malicious intent to defraud and deceive Banq made oral representations and promises including, but not limited to, asserting that Banq had a "rare opportunity" to be "the foundation for disruptive, revolutionary technology that will utterly transform everything from healthcare to the stock market, real estate, photo, film & music royalties, art, sports & concert tickets, DMV records, and more."

92.     However, on information and belief, Defendant Purcell instead intended to use Banq's pivot as a means to improperly use Banq's resources, intellectual property, personnel, opportunities, and corporate assets for his own personal gain.

93.     Defendant Purcell's material representations, omissions, and concealments were false because he knew that he intended to breach and was secretly breaching, his duties to Banq, winding down Banq's operations under false pretenses, and improperly using Banq's resources, technology, intellectual property, personnel, corporate opportunities, and corporate assets to develop technologies for his own personal gain and the benefit of the other Defendants.

94.     On or about September 20, 2021, after making material representations to Banq, Defendant Purcell incorporated Defendant Fortress NFT, a Web3 infrastructure company, to serve as a repository for and use of assets, opportunities, technology, and resources stolen from Banq.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

95.     Banq was unaware of Defendant Purcell's intention not to perform upon the promises and representations he made, and the company acted in justifiable reliance upon Defendant Purcell's promises, representations, omissions, and concealments.

96.     Defendant Purcell's conduct was intended to cause injury to Banq and was conducted with the intention to deprive Banq of its rights or otherwise cause injury.

97.     As a result of Defendant Purcell's false material representations, omissions, and concealments, Banq has been injured and suffered damages in an amount to be determined at trial.

98.     Defendant Purcell's acts were done knowingly, willfully, and with malicious intent, such that Banq is entitled to punitive damages in an amount appropriate to punish or set an example of Defendant Purcell in an amount to be determined by proof at trial.

## SEVENTH CLAIM FOR RELIEF
### Interference with Prospective Economic Advantage
### Against Defendant Purcell

99.     The allegations of paragraphs 1 through 98 are incorporated herein by reference.

100.    Banq had existing shareholders, investors, and prospective investors.

101.    Defendant Purcell knew about Banq's prospective contractual relationships and opportunities with its shareholders and/or with specifically identifiable potential investors, but chose to intentionally interfere with these relationships.

102.    On December 8, 2021, while still serving as Banq's CEO and on its Board, Defendant Purcell wrote to a select group of Banq shareholders and/or communicated with specifically identifiable potential investors.  He informed them that he was working on Defendant Fortress NFT and the soon-to-launch Planet NFT.  He stated that Defendant Planet NFT would be "a ridiculously easy way to publish (mint) NFT's (sic) on Polygon and Solona, as well as sell them directly or on a marketplace like Ethernity, Autograph, OpenSea, etc."

103.    On information and belief, Defendant Purcell committed multiple direct and intentional acts designed to disrupt and interfere with Banq's business relationships with its shareholders and/or with specifically identifiable potential investors, including but not limited to, soliciting Banq's shareholders, investors, and prospective investors to invest in Defendants Fortress

NFT and Planet NFT, and failing to communicate with and include Banq in the discussions about Defendants Fortress NFT and Planet NFT's formation.

104.    On information and belief, a number of Banq's shareholders and/or specifically identifiable potential investors have invested in Defendants Fortress NFT and Planet NFT, and both entities retain and use assets stolen from Banq.  These Banq shareholders and/or specifically identifiable potential investors did not make investments with or otherwise enter into contractual relationships with Banq.

105.    As a direct and proximate result of Defendant Purcell's wrongful conduct, Banq has been actually harmed and damaged.

### EIGHTH CLAIM FOR RELIEF
**Breach of Fiduciary Duties**
**Against Defendant Individuals**

106.    The allegations of paragraphs 1 through 105 are incorporated herein by reference.

107.    As alleged herein, each of the Defendant Individuals served as a Board director or officer of Banq, or both.  Thus, each owed a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at Banq's expense.

108.    The Defendant Individuals breached their fiduciary duties by, among other things, wrongfully:

1.    Transferring Banq's corporate assets to themselves or Defendants Fortress NFT and Planet NFT without any legitimate business purpose, including Banq's confidential and proprietary information and trade secrets, computers, and Allegiant Stadium seat licenses;

2.    Using Banq's trade secrets and proprietary software without authorization in order to establish a competing venture and launch a nearly identical product;

3.    Inducing key Banq employees to resign from their positions at Banq in order to work for their competing venture, Defendants Fortress NFT and Planet NFT;

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

4.      Transferring corporate assets to their competing venture Defendants Fortress NFT and Planet NFT without due consideration paid to the Company; and

5.      Diverting and usurping Banq's corporate opportunities for the benefit of Defendants.

109.    The Defendant Individuals' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, the Defendant Individuals intended to, and did, unduly benefit themselves and Defendants Fortress NFT and Planet NFT at the expense of Banq.

110.    As a direct and proximate result of the Defendant Individuals' foregoing breaches of fiduciary duties, Banq has sustained substantial damages, including, but not limited to, loss of value of Banq's trade secrets, loss of the value of Banq's corporate opportunities, and loss of the value of Banq's confidential and proprietary information.

111.    Banq has suffered and will continue to suffer irreparable harm as a result of the Defendant Individuals' activities, for which Banq has no adequate remedy at law.

### NINTH CLAIM FOR RELIEF
**Aiding and Abetting Breach of Fiduciary Duties**
**Against Defendants Fortress NFT and Planet NFT**

112.    The allegations of paragraphs 1 through 111 are incorporated herein by reference.

113.    As alleged herein, the Defendant Individuals breached their fiduciary duties to Banq.

114.    Defendants Fortress NFT and Planet NFT knowingly participated in the Defendant Individuals' breaches of their fiduciary duties to Banq by, among other things, hiring key employees from Banq at the direction of the Defendant Individuals and receiving corporate assets and proprietary information stolen from Banq.

115.    As a result of Defendants Fortress NFT's and Planet NFT's conduct, which constitutes aiding and abetting the breaches of fiduciary duties, Banq has suffered and will continue to suffer damages in an amount to be determined at trial.

### TENTH CLAIM FOR RELIEF
**Negligence for Spoliation of Evidence**
**Against Defendant Individuals**

116.    The allegations of paragraphs 1 through 115 are incorporated herein by reference.

117.    As alleged herein, on December 16, 2021, the Chairman of Banq's Board, Jon Jiles, wrote to Defendants Purcell and Georgiades, among others.  Chairman Jiles notified Defendants Purcell and Georgiades that "as officers of Banq" they had an obligation to "ensure that nothing is done to harm the going-concern value of Banq."  He asked the Defendants "to preserve all records and documentation and ensure Banq's technology is secure."  Chairman Jiles specifically instructed the Defendants to "not take any actions to spend or transfer Banq capital other than in the ordinary course of business and take all other actions proper and necessary to preserve the integrity of Banq's business."

118.    In or around December 2021, as officers and/or directors of Banq, the Defendant Individuals were aware of the potential for litigation and thus owed a duty of care to Banq to preserve evidence, including all confidential and proprietary information of the company.

119.    On information and belief, the Defendant Individuals breached that legal duty by destroying, deleting, and failing to retain Banq's records and documentation, including but not limited to documents, data, and communications related to Banq's corporate assets, trade secrets, and proprietary technology

120.    As a result of the Defendant Individuals' misconduct, Banq has suffered and will continue to suffer damages in an amount to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### Against All Defendants

121.    The allegations of paragraphs 1 through 120 are incorporated herein by reference.

122.    Defendants derived an improper benefit at the expense of Banq in the form of Banq's trade secrets, corporate assets, and computer equipment, and usurped Banq's corporate opportunities.

123.    Defendants have knowledge of and have accepted these benefits.  It would be inequitable to retain these benefits without payment to Banq.

124.    In addition, equity and good conscience require restitution.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

COMPLAINT

125.    As a result of Defendants' conduct constituting unjust enrichment, Banq has suffered and will continue to suffer damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Banq prays for judgment against the Defendants as follows:

1.      Judgment in Banq's favor and against Defendants on all claims for relief alleged herein;

2.      For permanent injunctive relief and other equitable relief, including unjust enrichment, precluding Defendants, and all others acting in concert with, and/or as agents of them, from all use of Banq's trade secrets, intellectual, and other properties.

3.      For damages in an amount in excess of $75,000;

4.      For return of all Banq's properties converted by Defendants;

5.      For punitive damages;

6.      For attorneys' fees and costs of suit incurred herein as allowed by law and contract;

7.      For prejudgment and post-judgment interest; and

8.      For such other and further relief as the Court deems just and equitable under the circumstances.

## **JURY DEMAND**

Plaintiff Banq hereby demands a trial by jury on all claims so triable.


Dated: May 16, 2022                          BROWNSTEIN HYATT FARBER
                                             SCHRECK, LLP


                                             By: /s/ Mitchell J. Langberg
                                                 MITCHELL J. LANGBERG
                                                 *Attorneys for Plaintiff*
                                                 BANQ, INC.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
Attorneys at Law
100 North City Parkway, Suite 1600
Las Vegas, NV 89106

COMPLAINT