UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BANQ, INC., | Case No.: 2:22-cv-00773-APG-VCF |
| Plaintiff | **Order Granting Motion to Compel Arbitration and Denying Motion to Dismiss as Moot** |
| v. | |
| SCOTT PURCELL, et al., | [ECF Nos. 22, 56] |
| Defendants | |

Plaintiff Banq, Inc. sued defendants Scott Purcell; George Georgiades; Kevin Lehtiniitty; Fortress NFT Group, Inc.; and Planet NFT, Inc. for the alleged theft of Banq's corporate assets, trade secrets, and proprietary technology. The defendants move to dismiss and to compel arbitration. Banq opposes both motions.

The parties are familiar with the facts so I repeat them only as necessary to resolve the motions. I grant the motion to compel arbitration because the defendants did not waive their right to arbitrate and the question of whether Banq's claims fall within the arbitration clause is a matter clearly and unmistakably delegated to the arbitrator. I compel arbitration as to the corporate defendants even though they did not sign the arbitration agreements because Banq alleges substantially interdependent and concerted misconduct by the signatories and the non-signatories. Because I am compelling arbitration, I dismiss this case and I deny as moot the motion to dismiss for failure to state a claim.

# I. MOTION TO COMPEL ARBITRATION

The defendants move to compel arbitration based on arbitration clauses in employment agreements each of the individual defendants signed. The defendants contend that because those agreements incorporate the rules of the American Arbitration Association (AAA), the question of

arbitrability is delegated to the arbitrator. Alternatively, they argue that if the court is going to decide arbitrability, Banq's claims fall within the arbitration clauses. The defendants argue that Banq's claims against the corporate defendants should also be sent to arbitration even though the corporate defendants did not sign the employment agreements because Banq alleges interdependent misconduct between the signatories and non-signatories. Finally, the defendants contend I should dismiss this case because all claims must be arbitrated.

Banq responds that the individual defendants waived their right to arbitrate by litigating this case in federal court. Alternatively, Banq argues that incorporation of the AAA rules does not unambiguously delegate arbitrability to the arbitrator. Banq contends that I should determine arbitrability and that none of its claims falls within the scope of the employment agreements' arbitration clauses. Finally, Banq contends it should not be compelled to arbitrate its claims against the corporate defendants because those claims do not arise under the employment agreements.

**A. Waiver**

The question of whether a party waived its right to arbitrate based on its litigation conduct "is presumptively for a court and not an arbitrator to decide." *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016).[1] In light of the "strong federal policy favoring enforcement of

---

[1] The defendants do not appear to be arguing that the employment agreements clearly and unmistakably delegate to the arbitrator the question of waiver by litigation conduct. *Martin*, 829 at 1124 ("If the parties intend that an arbitrator decide that issue under a particular contract, they must place clear and unmistakable language to that effect in the agreement."). Even if they did, I would reject that proposition. Every circuit to consider the question of whether the AAA rules delegate that question to the arbitrator have concluded they do not. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 264-65 (5th Cir. 2021) (holding that incorporation of AAA rules does not clearly and unmistakably "give arbitrators the power to resolve questions of waiver through litigation"); *Plaintiffs' S'holders Corp. v. S. Farm Bureau Life Ins. Co.*, 486 F. App'x 786, 789-90 (11th Cir. 2012) (reaching the same conclusion). *See also Morgan Stanley & Co. LLC v. Couch*, 659 F. App'x 402, 404-05 (9th Cir. 2016) (holding

arbitration agreements," waiver of the right to arbitration is "disfavored" and any party arguing waiver of arbitration "bears a heavy burden of proof." *Id.* at 1124 (simplified). To show the defendants waived their right to arbitration, Banq must show (1) the defendants knew of "an existing right to compel arbitration" and (2) the defendants engaged in "acts inconsistent with that existing right." *Id.* (quotation omitted); *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022) (eliminating third requirement of prejudice in establishing waiver of arbitration).

### 1.  Knowledge of Existing Right to Compel Arbitration

The individual defendants knew of their right to compel arbitration under the employment agreements they signed. *See* ECF Nos. 58; 59; 60; *Hoffman Constr. Co. of Oregon v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (stating that the plaintiff knew about its right to compel arbitration because the "contract itself called for arbitration of disputes between" the plaintiff and the defendant).[2] Banq thus has established the first requirement for waiver.

---

that arbitration clause's language that "any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration" did not clearly and unmistakably "encompass disputes over whether the clause remains valid in light of the parties' litigation conduct"); *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 15 (1st Cir. 2005) (reaching similar conclusion where arbitration agreement referred "arbitrability" to the arbitrator).

I agree. The AAA rules provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Employment Arbitration Rules and Mediation Procedures, Rule 6(a). The argument that a party has waived its right to arbitration through its litigation conduct does not challenge the existence, scope, or validity of the arbitration agreement. Rather, it is an argument that even if a valid arbitration agreement covers the dispute, the party seeking to compel arbitration has waived its contractual right to insist on arbitration through its participation in the lawsuit. I therefore will address the question of whether the defendants waived their right to compel arbitration.

[2] *See also Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1228 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016) (holding the defendant knew of his right to arbitrate because he signed the relevant agreement "and twice initialed the Arbitration Clause provisions"); *Vibrantcare Rehab., Inc. v. Deol*, Case No. 2:20-cv-00791-MCE-AC, 2021 WL 4443310, at *1 (E.D. Cal. Sept. 28, 2021) ("Defendant had knowledge of the arbitration

2. Acts Inconsistent with Right to Compel Arbitration

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate; rather, [I] consider the totality of the parties' actions." *Newirth by & through Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019) (simplified). "[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.*

Banq argues that the defendants' following actions are inconsistent with the right to arbitrate: (1) accepting service of the complaint; (2) agreeing to respond to early Rule 34 discovery requests in exchange for additional time to respond to the complaint; (3) filing a motion to dismiss under Rule 12(b); and (4) participating in the discovery and scheduling process, such as meeting and conferring, serving initial disclosures, and stipulating to protective and ESI orders. The defendants counter that these actions are not inconsistent with the right to arbitrate and instead are largely defensive acts.

The defendants did not act inconsistent with their right to arbitration by seeking additional time to respond to the complaint or by meeting and conferring over discovery requests as the Local Rules require. Such actions are "less accurately characterized as active litigation than as an effort to protect [their] position." *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1413 (9th Cir. 1990); *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, Case No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) (stating that a party does not act inconsistent with its right to arbitrate by operating "primarily in a defensive posture").

---

agreement once she signed it in March 2019, regardless of whether she remembered signing it in the first place.").

4

      Likewise, the defendants serving initial disclosures does not waive the right to arbitrate because the defendants have not otherwise conducted discovery. Courts have found waiver where the defendants have actively engaged in significant discovery, such as "answering discovery" and "preparing for and conducting a deposition." *Martin*, 829 F.3d at 1126; *see also Greg Opinski Constr., Inc. v. Braswell Constr., Inc.*, Case No. 1:09-cv-00641-LJO-GSA, 2009 WL 3789609, at *4 (E.D. Cal. Nov. 10, 2009) (finding that "significant discovery" had not been "undertaken and completed" where "only the initial disclosure deadline has passed"). The defendants have resisted discovery requests, as shown by Banq's motion to compel production of documents, which the defendants opposed, and the defendants' motion to stay discovery. ECF Nos. 48; 61; 65. The Ninth Circuit has found this conduct to be "not inconsistent" with the right to arbitrate and "motivated more by [a] determination to avoid or frustrate the litigation." *Britton*, 916 F.2d at 1413. However, the defendants' agreeing to a stipulated protective order weighs in favor of finding waiver. *See Martin*, 829 F.3d at 1126 (identifying "entering into a protective order" as included in "conduct inconsistent with [the] right to arbitrate").

      Banq points to the defendants' failure to raise arbitration during the parties' communications and cites to *Sequoia Benefits & Insurance Services, LLC v. Costantini*, for the proposition that "[c]ourts have held that failure to raise arbitration in a 'case management statement strongly indicates that defendants have acted inconsistently for the purposes of finding waiver.'" ECF No. 69 at 14 (quoting *Sequoia Benefits*, 553 F. Supp. 3d 752, 759 (N.D. Cal. 2021)). However, the *Sequoia Benefits* defendants had "explicitly, and without qualification, asserted in a statement to the Court that they did not believe this case suitable for reference to binding arbitration." 553 F. Supp. 3d at 759. In contrast, the defendants here merely stated in their original and amended Joint Rule 26(f) Report, Discovery Plan, and Proposed Scheduling

Order that the parties "have met and conferred about the possibility of using alternative dispute-resolution processes including . . . arbitration" and "have and will continue to consider methods of alternative dispute resolution." ECF Nos. 29 at 6; 34 at 5.  Those statements are not so explicit and unqualified as the statement in *Sequoia Benefits* to indicate the defendants acted inconsistent with the right to compel arbitration.

As to the defendants' motion to dismiss, "[s]eeking a decision on the merits of a key issue in a case indicates an intentional and strategic decision to take advantage of the judicial forum." *Newirth*, 931 F.3d 941.  However, "moving to dismiss a complaint without prejudice or moving to dismiss an action on jurisdictional or res judicata grounds is not inconsistent with a known right to compel arbitration because such motions do not seek a judicial determination on the merits." *Id.* at 942 n.10.  The defendants' motion to dismiss generally argues that Banq's complaint fails to adequately plead the asserted claims. ECF No. 22.  The defendants raise three contentions that arguably seek dismissal with prejudice as to some claims.  First, the defendants argue that some of Banq's state law tort claims are preempted by its statutory claims and therefore fail as a matter of law. *Id.* at 19-21.  However, that argument is essentially an effort to identify the proper claim rather than obtain an adjudication on the merits.  The defendants also contend that the fraud claim fails because the identified fraudulent statement is mere puffery. *Id.* at 21-22.  But Banq presumably could amend to add facts showing it was not mere puffery or to identify other allegedly fraudulent statements if facts exist to do so.  And although the defendants assert that negligence for spoliation is not a cognizable claim, they acknowledge that courts have found that such a claim exists under certain circumstances but contend that Banq did not allege facts to state a claim. *Id.* at 22 ("Banq's claim fails to plead facts to support any exception to the general holding that Nevada does not recognize such a claim.").

In sum, the defendants' primary arguments in their motion to dismiss focus on deficient pleading and therefore they principally are not seeking a decision on the merits. *See Newirth*, 931 F.3d at 942 n.10; *see also Chartwell*, 2020 WL 620294, at *9. This conclusion is supported by the fact that the defendants' motion to dismiss includes an alternative request for a more definite statement under Rule 12(e). The defendants' actions thus "are more consistent with an effort to clean up the pleadings than to exploit the judicial forum by obtaining dispositive relief." *Priv. Nat'l Mortg. Acceptance Co., LLC v. Proprietary Cap., LLC*, Case No. 2:21-cv-02992-SB-AS, 2022 WL 3110316, at *3 (C.D. Cal. Mar. 4, 2022); *see also Chartwell*, 2020 WL 620294, at *9 (finding no waiver where a motion to dismiss "is focused principally on [the] [d]efendants' arguments that the [complaint] is deficiently pleaded [and] a more definite statement is needed").

Finally, Banq asserts that the defendants waited too long to move to compel arbitration because the motion "comes just under the half-way point of the case." ECF No. 69 at 14 n.8. The defendants counter that they moved to compel arbitration less than five months after Banq filed its complaint. This case is in an early stage. There is a pending motion to dismiss, discovery does not close until March 2023, expert disclosures conclude in May 2023, and dispositive motions are due in July 2023. ECF Nos. 22; 35. The parties could seek further extensions of these deadlines, particularly if I granted the motion to dismiss with leave to amend. No trial date has been set. In any event, timing is but one factor in the totality of circumstances in determining whether the defendants acted inconsistently with their right to compel arbitration. A five-month delay is "on the shorter end of the spectrum" and, both on its own and considered in context, does not weigh in favor of waiver. *Sequoia Benefits*, 553 F. Supp. 3d at 760. Viewing the defendants' actions in their totality, Banq has not met its heavy burden of establishing the defendants acted so inconsistently with their right to arbitrate that they waived that right.

### B. Who Decides Arbitrability

The defendants argue that the parties clearly and unmistakably delegated the determination of arbitrability to an arbitrator by incorporating the AAA rules. Banq contends that it is unclear from the employment agreements which of the AAA rules applies, and, in any event, incorporation of the AAA rules does not clearly and unmistakably delegate arbitrability.

The individual defendants signed employment agreements that contained an arbitration provision stating that "[a]ny claim or dispute arising under this Agreement may only be brought in arbitration, pursuant to the then current rules of the American Arbitration Association, with venue in Las Vegas, Nevada." ECF Nos. 58-1 at 5; 59-1 at 5; 60-1 at 4. The Ninth Circuit has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The contract in *Brennan* required arbitration "in accordance with the Rules of American Arbitration Association," and the then-applicable AAA rule stated that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." *Id.* at 1128, 1130 (quotations omitted). Likewise here, the contract requires arbitration pursuant to the AAA rules, and current AAA Employment Arbitration Rule 6(a) provides that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."

Banq contends that because the employment agreement does not identify which set of AAA rules applies, it does not clearly and unmistakably delegate arbitrability to the arbitrator. But the agreements at issue are employment agreements, so the AAA Employment rules apply. AAA Employment Arbitration Rules and Mediation Procedures, Rule 1 ("The parties shall be

deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the . . . AAA . . . or under its Employment Arbitration Rules and Mediation Procedures or for arbitration by the AAA of an employment dispute without specifying particular rules." (footnote omitted)); *see also id.* Introduction ("These dispute resolution procedures were developed for arbitration agreements contained in employee personnel manuals, an employment application of an individual employment agreement . . . and other types of employment agreements or workplace agreements."). Banq does not identify what other AAA rules would apply. In any event, the AAA's Commercial, Construction Industry, Consumer, Labor, International, and Optional Appellate rules contain similar provisions. Commercial Rule 7(a); Construction Industry Rule R-9(a); Consumer Rule R-14(a); Labor Rule 3(a); International Article 21(1); Optional Appellate Rule A-9.

Because the employment agreements clearly and unmistakably delegate arbitrability to the arbitrator, I do not address arbitrability. Instead, I compel arbitration and leave the arbitrability question for the arbitrator to resolve.

**C. Corporate Defendants**

The defendants argue that although the corporate defendants did not sign the employment agreements, Banq nevertheless should have to arbitrate its claims against them because Banq alleges interdependent misconduct between the signatories and non-signatories. Banq responds that those claims do not arise under the employment agreements.

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (quotation omitted). Because the employment agreements do not clearly and unmistakably state that Banq agreed to

arbitrate arbitrability with non-signatories, I address whether the non-signatory corporate defendants can compel arbitration. *Id.* at 1127.

Whether a non-signatory to an arbitration agreement may invoke arbitration under the Federal Arbitration Act depends on whether "the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1128.  The employment agreements state they are governed by Nevada law. ECF Nos. 58-1 at 5; 59-1 at 5; 60-1 at 4.  I therefore look to Nevada law to determine whether the non-signatory corporate defendants can compel arbitration.

Nevada recognizes the doctrine of equitable estoppel in determining when a non-signatory to an arbitration agreement may compel arbitration. *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660-61 (Nev. 2008).  As relevant here, equitable estoppel applies "when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Hard Rock Hotel, Inc. v. Eighth Jud. Dist. Ct. of State in & for Cnty. of Clark*, No. 71274, 390 P.3d 166, 2017 WL 881877, at *2 (Nev. 2017) (unpublished) (quotation omitted).

Banq has alleged substantially interdependent and concerted misconduct by the individual defendant signatories and the non-signatory corporate defendants.  Banq asserts claims for misappropriation of trade secrets and violations of Nevada Revised Statutes § 205.4765 against all defendants based on the same course of conduct. *See* ECF No. 1 at 15-19.  Banq also alleges that the corporate defendants aided and abetted the individual defendants' breaches of their fiduciary duties. *Id.* at 23.  To show the corporate defendants aided and abetted a breach of fiduciary duties, Banq must show: "(1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the

breach, and (4) the breach of the fiduciary relationship resulted in damages." *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (en banc). Consequently, Banq is alleging that the corporate defendants and the individual defendants jointly participated in a breach of fiduciary duties. I therefore enforce the arbitration provisions as to the corporate defendants.

### D. Dismissal

Section 3 of the Federal Arbitration Act states that the court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Despite this seemingly mandatory language to stay the case, it lies within my discretion whether to stay or dismiss where all the claims are subject to arbitration. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073-74 (9th Cir. 2014). Because all claims are subject to arbitration, I dismiss this case.

## II. CONCLUSION

I THEREFORE ORDER that the defendants' motion to compel arbitration **(ECF No. 56) is GRANTED**.

I FURTHER ORDER that the defendants' motion to dismiss **(ECF No. 22) is DENIED as moot**.

I FURTHER ORDER that this action is dismissed. The clerk of court is instructed to close this case.

DATED this 14th day of January, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE