UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Banq, Inc., a Florida Corporation,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>Scott Purcell, an individual; George Georgiades, an individual; Kevin Lehtiniitty, an individual; Fortress NFT Group, Inc. dba Fortress Block Chain Technologies, a Delaware corporation; and Planet NFT, Inc., a Delaware corporation,<br><br>　　　　　　Defendants. | Case No. 2:22-cv-00773-APG-DJA<br><br>**Order** |

　　　This action arises out of Defendants Scott Purcell, George Georgiades, and Kevin Lehtiniity's former executive employment with—and subsequent departure from—Plaintiff Banq, Inc. Banq alleges that Purcell, Georgiades, and Lehtiniitty stole Banq's trade secrets, intellectual properties, and business opportunities before they departed and used those assets to form Fortress NFT and Planet NFT, which companies are also Defendants in this action. Banq now sues Defendants for the business decline it has experienced since their departure. Defendants defend against this action on the theory that Banq's chairman John Jiles was really the one responsible for Banq's decline. They assert that, after they left, Jiles focused the company on vindictively litigating claims against Defendants, which caused the company to decline.

　　　Before Defendants left Banq, non-party N9 Advisors, LLC extended millions of dollars in credit to Banq through a promissory note. When Banq's business declined, Banq defaulted on the note and N9 sued Banq in a Florida action. Banq later filed for bankruptcy, which bankruptcy N9 challenged as being brought in bad faith.

　　　N9 now moves to quash and for a protective order over the subpoena Banq has served on it in connection with this lawsuit. (ECF Nos. 133, 134). N9 argues that the subpoena is

overbroad, unduly burdensome, seeks irrelevant information, seeks confidential and privileged information, and is really an attempt by Banq to stall or impede N9's efforts to collect on its note. N9 also argues that Banq either has the information it seeks in its possession or can obtain that information from Defendants.

Banq argues that the information it seeks is relevant to its theory that Defendants caused the company to decline. Banq asserts that it is entitled to explore whether Defendants used the money N9 loaned Banq to pursue Planet NFT and Fortress NFT and whether N9 knew about that. Banq adds that it is not seeking privileged information and cannot obtain this information from other sources because, when Defendants left Banq, Banq alleges that they stole or destroyed documents. Because the Court finds that N9 has not carried its burden of showing why the Court should quash the subpoena or enter a protective order, it denies N9's motion to quash and motion for protective order.

## I.     Legal standard.

Rule 45 governs the issuance of subpoenas requiring non-parties to produce designated documents and to testify. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii); *see Millenium Drilling Co., Inc. v. Beverly House-Meyers Revocable Trust*, No. 2:12-cv-00462-MMD-CWH, 2015 WL 13940564, at *1 (D. Nev. Jan. 8, 2015) ("A Rule 45 subpoena is required to obtain testimony or documents from one who is not a party to the action or controlled by a party to the action."). A court must grant a timely motion to quash or modify a subpoena that fails to allow reasonable time to comply, requires a person to comply beyond the geographical limits specified in Rule 45(c), requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. *See* Fed. R. Civ. P. 45(d)(3)(A). The movant seeking to quash a subpoena bears the burden of persuasion. *Green v. Baca*, 226 F.R.D. 624, 653 (C. D. Cal. 2005).

Rule 26(c) permits courts to issue a protective order upon a showing of good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Torres v. Rothstein*, No. 2:19-cv-00594-APG-EJY, 2020 WL 3808899, at *5 (D. Nev. July 6, 2020). This "burden is upon the party seeking the order to 'show good cause' by

demonstrating harm or prejudice that will result from the discovery." *Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-01561-MMD-NJK, 2014 WL 1796216, at *3 (D. Nev. May 6, 2014) (internal citation and quotation marks omitted). The moving party can satisfy its burden by showing that the discovery requested is irrelevant, overly broad, burdensome, or oppressive. *Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, No. 2:15-cv-01228-RFB-GWF, 2018 WL 10323384, at *1 (D. Nev. Apr. 20, 2018).

## II.  Discussion.

N9 seeks to quash or for a protective order over Banq's subpoena on five grounds: (1) that Banq has issued the subpoena for an improper purpose; (2) that the subpoena is burdensome; (3) that the subpoena seeks irrelevant information; (4) that the subpoena seeks confidential information; and (5) that the subpoena seeks privileged information. The Court finds that N9 has not carried its burden of showing that the Court should quash the subpoena or to issue a protective order protecting N9 from the subpoena on any of these grounds. So, the Court denies N9's motion to quash and motion for protective order.

### A.  *Improper purpose.*

N9 predominantly objects to Banq's subpoena on the grounds that N9 believes that Banq has issued the subpoena for the improper purpose of harassing N9. N9 outlines the history of the various litigations in which Banq is involved and asserts that Banq's behavior in those actions indicate that Banq is really trying to relieve itself and Jiles from their liabilities, including to N9. In response, Banq confines its arguments to the subpoena and argues that its motives in seeking the subpoena are legitimate.

Ultimately, the Court cannot determine whether Banq has issued its subpoena for an improper purpose without potentially opining on the merits of this case and others, which are ongoing and strongly contested by the parties. The Court declines N9's invitation to delve into the weeds of these ongoing cases. So, the Court denies N9's motion to quash and motion for protective order on this ground.

### B. Burdensomeness.

N9 argues that deposition topics 1, 2, 3, 4, 5, 6, and 12, and document requests 1, 2, 3, and 9 are burdensome because Banq can obtain the information it seeks through these topics and requests from the parties to the litigation. Banq has argued that it cannot seek this information from the parties to the litigation because Banq claims that Defendants stole this information. Under Federal Rule of Civil Procedure 45(d)(3)(A)(iv), a court may quash or modify a subpoena that subjects a person to an undue burden. Under Federal Rule of Civil Procedure 26(b)(2)(C)(i), the court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive."

N9 has not advanced a compelling argument that Banq is not permitted to obtain information from N9 simply because Defendants might also have that information. This is because, while N9 believes that Banq may also be in possession of this information, Banq has indicated that it cannot obtain the documents from its own records because Defendants took or destroyed them. And, because Banq alleges that Defendants destroyed documents, and so needs to reconstruct the record of the loan transaction with documents from N9, it is not clear that it would be more convenient for Banq to obtain the documents from the very Defendants it asserts destroyed them. Indeed, Banq is entitled to determine what information N9 has in its possession compared to the information that Defendants have in theirs to pursue its claims asserting that Defendants stole or destroyed certain information. So, the Court denies N9's motion to quash and motion for protective order on this ground.

### C. Relevance.

N9 argues that topics 1, 3, 4, 7, 9, 10, 11, and 13 and portions of 5 and 8 regarding Banq's financing, along with requests 1, 3, 4, 5, 6, 7, 8 9, 10, 11 and portions of requests 2 and 6 regarding Banq's financing are not relevant to this case. N9 asserts that these requests relate to N9's internal policies and practices for retaining and destroying documents, which N9 asserts bears no relation to Banq's claims in this case. However, Banq has alleged that Defendants stole and destroyed information and that N9 was partially involved in Defendants decision to do so. So, N9's internal retention policies are relevant to Banq's search for the information it alleges it

has lost. *See* Fed. R. Civ. P. 26(b)(1). The Court denies N9's motion to quash and motion for a protective order on this ground.

### D. Confidentiality.

N9 argues that topics 8, 9, and 10 and requests 5, 6, and 7 seek proprietary and confidential information. N9 asserts that these topics and requests seek information regarding N9's due diligence process and the timing, rationale, and internal approval process for its loans. N9 asserts that this information is proprietary and confidential because it relates to N9's strategic decisions regarding how, when, and why N9 issues loans. Under Federal Rule of Civil Procedure 45(d)(3)(B)(i), the court may quash or modify a subpoena if the subpoena requires a party to disclose "a trade secret or other research, development, or commercial information."

Here, Banq has persuasively argued that this information is relevant to its claims that N9 issued the loan to Banq when it was controlled by Defendants for the improper purpose of helping Defendants pursue a business strategy that ultimately resulted in Banq's financial decline. Additionally, the topics and requests at issue are confined to N9's loan decisions with regard to Banq, not N9's loan decisions with regard to any other entity. N9 has also not argued, and it does not appear, that Banq is a direct competitor to it. Moreover, if N9 is concerned about producing this information, it may stipulate to or move for a protective order to govern its exchange of this information. Because the parties do not propose the terms of a protective order under which N9 might produce these materials, the Court does not enter any protective order over this material at this stage. The Court denies N9's motion to quash and motion for a protective order on this ground.

### E. Privilege.

N9 argues that topics 3, 4, 7, 8, 9, 10, 11, 13, 14, and 15 and requests 4, 5, 6, 7, 8, 10, 11, and 12 are so overbroad that they would necessarily require N9 to produce privileged information. However, just because a request might encompass privileged information is not a reason to not respond at all. This is particularly true because Banq insists that it does not seek privileged information, but expects that N9 will withhold any privileged information and send Banq a privilege log. Indeed, N9 may refuse to produce privileged information that is otherwise

responsive to the requests if it states that it is withholding privileged information.  *See* Fed. R. Civ. P. 34(b)(2)(C) (explaining that an objection "must state whether any responsive materials are being withheld on the basis of that objection"); *see* Fed. R. Civ. P. 26(b)(1) (stating that the scope of discovery includes "any nonprivileged matter…").  So, the Court denies N9's motion to quash and motion for protective order on this ground.

**IT IS THEREFORE ORDERED** that N9's motion to quash (ECF No. 133) and motion for protective order (ECF No. 134) are **denied.**

DATED: July 14, 2025

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE